Grafton
No. 93-030

THE STATE OF NEW HAMPSHIRE

v.

STEVEN D. BONACORSI

September 26, 1994

*Jeffrey R. Howard,* attorney general (*John A. Curran,* assistant attorney general, on the brief and orally), for the State.

*Albert E. Scherr,* assistant appellate defender, of Concord, by brief and orally, for the defendant.

BROCK, C.J.  The defendant, Steven D. Bonacorsi, was convicted on four indictments of felonious sexual assault, RSA 632-A:3, II (1986), after a jury trial in the Superior Court (*Morrill,* J.). On appeal, he contends that the trial court erred in its answer to a

jury question regarding the doctrine of jury nullification. We affirm.

The defendant was employed at the Plymouth Regional High School to assist youths having drug and alcohol abuse problems. The indictments against him were based on incidents of sexual contact with a fifteen-year-old student who attended the school. Prior to his closing argument to the jury, defendant's counsel requested that the court give an instruction on the doctrine of jury nullification. The trial court denied the request, stating that the case was "entirely inappropriate" for such a charge. Instead, the judge indicated that he would allow defendant's counsel to advise the jury of its power of nullification. The judge also indicated that if defendant's counsel emphasized jury nullification "too strenuously," he would clearly explain to the jurors that they were to take their instructions from the court and not from counsel. During his closing argument, defendant's counsel argued the nullification doctrine by twice reading verbatim from the New Hampshire Bar Association Criminal Justice Section's Criminal Jury Instruction 3.17 on jury nullification and by paraphrasing its language a third time within the factual context of the case. The instruction reads: "Even if you find that the State has proven each and every element of the offense charged beyond a reasonable doubt, you may still find the defendant not guilty if you have a conscientious feeling that a not guilty verdict would be a fair result in this case." N.H. CRIMINAL JURY INSTRUCTIONS 3.17 (1985).

Thereafter, in his charge to the jury, the trial judge stated:

> Likewise, you've heard the lawyers make certain statements about what the law is in these cases, and again, that's their job as advocates.

> However, I'm the only one that can tell you what the law is in this case. And if the lawyers stated the law differently or at variance from how I am giving it to you in these instructions, you must follow the law as the Judge gives it to you in these instructions.

The trial court then instructed the jury three separate times that if it had a reasonable doubt as to whether the State had proved any one or more of the elements of the crime charged, it "must" find the defendant not guilty. The trial court twice followed with an instruction to the jury that if it found the State had proved all the elements of the offenses charged beyond a reasonable doubt, it "may" find the defendant guilty. *Cf. State v. Wentworth,* 118 N.H. 832, 838–39, 395 A.2d 858, 862–63 (1978).

During its deliberations, the jury sent the following question to the trial judge:

> During his summation [t]he defense attorney held up the copy of a law that supposedly allows the jury to come to a not guilty verdict even though they felt that the defendant is actually guilty—if they feel the consequences of this verdict would be harmful to all or anyone concerned. Is this in fact a law and could we be shown this.

The trial judge refused the defendant's request to inform the jury of "the prerogative to return not guilty verdicts, even if the State has proven the defendant guilty." He also refused to reiterate any portion of his jury instructions. Instead, the trial court answered the jury's question: "You are to follow the court's instructions."

■ Our standard for reviewing the trial court's instruction is as follows:

> The scope and wording of jury instructions is generally within the sound discretion of the trial court, and any allegations of error will be evaluated by interpreting the disputed instructions in their entirety, as a reasonable juror would have understood them, and in light of all the evidence in the case. Reversal of a jury verdict is unwarranted when a jury charge fairly covers the issues and law of a case.

*State v. Cegelis,* 138 N.H. 249, 251–52, 638 A.2d 783, 784 (1994) (quotation, ellipsis, and brackets omitted).

The defendant contends that the trial court's response constituted a refusal to provide the jury with any version of the requested nullification instruction. He claims that the jury's question independently raised the nullification prerogative and that the court's response necessarily left the jurors with the mistaken impression that the prerogative did not exist, thus superseding the exercise of their own judgment. We disagree.

At the outset, we note that the trial court twice instructed the jury that if it found the State had proved all the elements of the offenses charged beyond a reasonable doubt, it "may" find the defendant guilty. The model charge recommended by this court in *Wentworth* concerning the reasonable doubt standard states that the defendant *should,* not *may,* be found guilty if the State has proven its case. *See Wentworth,* 118 N.H. at 838–39, 395 A.2d at 862–63. While neither party has challenged the effectiveness of the trial court's charge as to that standard, we reiterate that trial

courts should use the language of the model charge in *Wentworth* in order to avoid needless litigation. *Id.* at 838, 395 A.2d at 862.

■ We have held "that use of the term 'should' in a *Wentworth* charge provides the equivalent of a jury nullification instruction, in that the jurors are notified that they *may* acquit the defendant even if the State proved beyond a reasonable doubt each element of the offenses charged." *State v. Paris,* 137 N.H. 322, 333, 627 A.2d 582, 589 (1993) (emphasis added and quotation omitted). Here, we find that the trial court's use of the permissive form "may" instead of "should" similarly served to provide the equivalent of a jury nullification instruction.

We have recognized jury nullification as "the undisputed power of the jury to acquit, even if its verdict is contrary to the law as given by the judge and contrary to the evidence." *State v. Mayo,* 125 N.H. 200, 203, 480 A.2d 85, 87 (1984) (quotation omitted). The nullification power is

> an historical prerogative of the jury . . . [and] a power that must exist as long as we adhere to the general verdict in criminal cases, for the courts cannot search the minds of the jurors to find the basis upon which they judge. If the jury feels that the law under which the defendant is accused is unjust, or that exigent circumstances justified the actions of the accused, or for any reason which appeals to their logic or passion, the jury has the power to acquit, and the courts must abide by that decision.

*Id.* (quotations omitted). We need not recite the long and colorful history of the prerogative, as it is ably related in *United States v. Dougherty,* 473 F.2d 1113, 1130–33 (D.C. Cir. 1972), and *United States v. Moylan,* 417 F.2d 1002, 1006 (4th Cir. 1969), *cert. denied,* 397 U.S. 910 (1970).

■ While recognizing the prerogative, we have nonetheless consistently held that jury nullification is neither a right of the defendant, nor a defense recognized by law. *E.g., State v. Haas,* 134 N.H. 480, 486, 596 A.2d 127, 131 (1991). Accordingly, a defendant is not invariably entitled to a jury nullification instruction. *Id.* Rather, it is within the sound discretion of the trial court to determine if the facts of a particular case warrant a jury nullification instruction when it has been requested by a party. *Id.*

The defendant's argument that the trial court's response to the jury question constituted a refusal to provide the jury with any version of the requested nullification instruction is without merit. The trial court had already instructed the jury twice using

language equivalent to that of the *Wentworth* charge. The trial court's response directed the jury to review the entire instructions, which included the "reasonable doubt" charge. That charge stated that the jury *must* acquit if the State failed to carry its burden, but *may* convict if the State proved its case. The contrast in the instruction's directives maintained the possibility that the jury could ignore the law if it chose to do so. *See United States v. Sepulveda,* 15 F.3d 1161, 1190 (1st Cir. 1993), *cert. denied,* 114 S. Ct. 2714 (1994).

■ The defendant claims that the jury's question independently raised the nullification prerogative. The defendant argues that when the jury itself decides to consider the prerogative, the trial court must instruct the jury correctly concerning the same. We likewise find no merit in this argument. Defense counsel specifically argued the possibility of jury nullification three times during his closing; he expressly made the jury aware of its nullification prerogative. The jury's question specifically referred to defense counsel's closing argument regarding nullification. This is not a case in which the jury independently conceived the idea of acquitting the defendant despite proof beyond a reasonable doubt and was thereby moved to request additional instruction from the judge on its own. These circumstances differ significantly from those in which the jury "must itself identify the case as establishing a call of high conscience, and must independently initiate and undertake an act [of nullification]." *Dougherty,* 473 F.2d at 1136–37. Accordingly, the mere fact that the jury inquired about nullification in response to defense counsel's closing argument did not mandate that the trial court give a separate supplemental instruction concerning the doctrine.

Finally, we disagree with the defendant's argument that the trial court's response left the jury with the impression that the nullification prerogative did not exist because the jury was not given what it had requested. Defense counsel was not prevented from presenting the jury with the possibility of jury nullification. The trial court's subsequent "reasonable doubt" charges twice provided the equivalent of a jury nullification instruction and did not negate defense counsel's earlier statements on the issue. *See Mayo,* 125 N.H. at 202–04, 480 A.2d at 86–87. Consequently, the jury had been apprised of the possibility of nullification by both defense counsel and the trial court.

■ The jury's question specifically asked if the nullification doctrine, as argued by defense counsel, was "a law." The question

generally inquired if such a power existed. Had the trial court answered in the negative, the jury might have understood the response to remove nullification from their consideration. *See State v. Jones,* 125 N.H. 490, 494, 484 A.2d 1070, 1073 (1984). The trial court's response, however, directed the jury to review the entire charge, which included the language of the earlier "reasonable doubt" instructions. The response neither resolved a factual issue nor superseded the exercise of the jurors' own judgment. *See State v. Mansfield,* 134 N.H. 287, 289, 592 A.2d 512, 513 (1991); *cf. Jones,* 125 N.H. at 494, 484 A.2d at 1073. Based on our review of the record in this case, we find that the trial court's answer served as an adequate response to the jury's question and the defendant's request for supplemental instructions; a more specific response was not required.

*Affirmed.*

All concurred.