Merrimack
No. 2002-036

THE STATE OF NEW HAMPSHIRE

v.

NANCY LAMPREY

Argued: February 13, 2003
Opinion Issued: April 23, 2003

*Stephen J. Judge,* acting attorney general (*Jonathan V. Gallo,* attorney, on the brief and orally), for the State.

*Christopher M. Johnson*, chief appellate defender, of Concord, by brief and orally, for the defendant.

DUGGAN, J. The defendant, Nancy Lamprey, appeals a jury verdict from the Superior Court (*Fitzgerald*, J.) finding her guilty of one count of manslaughter, *see* RSA 630:2 (Supp. 2002), one count of misdemeanor reckless conduct, *see* RSA 631:3 (1996), and four counts of first-degree assault, *see* RSA 631:1 (1996), in connection with a motor vehicle crash that occurred on September 14, 2000, in Loudon. The defendant argues that the trial court improperly instructed the jury on the element of causation and improperly admitted evidence of prior acts. We affirm.

The record supports the following facts. The defendant operated a child daycare center in her home. For a number of years, she cared for pre-school-age children during the day and provided after-school care to school-age children. The defendant would meet the school-age children in the afternoon at the bus stop where the school bus dropped them off, sometimes walking to the bus stop and other times driving her pickup truck. When the defendant drove the truck, the children routinely rode back to her house in the truck bed. According to testimony at trial, on one occasion not long before the accident, a parent saw children riding in the bed of the defendant's truck and complained to her.

On September 14, 2000, the defendant drove her truck to the bus stop and picked up six children. Three of the children were six years old and three were ten years old. At the bus stop, she opened the gate to the bed of the truck and all six children climbed into the bed. No child seats or safety belts were in place in the truck bed.

On the drive to the defendant's home, the truck left the road and struck a tree. All six children suffered injuries, and one of the children, Katie Silva, died.

According to the State, the accident occurred while the defendant was driving so-called "swervies" to entertain the children. When performing swervies, the defendant would steer the truck back and forth in a zigzag pattern. The State introduced testimony from three children that the defendant was doing swervies just before the accident, as well as testimony by police officers about tire marks they observed on the road leading to the site of the accident. According to expert testimony for the State, no mechanical problem with the truck contributed to the accident. The defendant stated she did not remember doing swervies on the day of the accident but, if she did so, it was because there was a dog in the road. She contended that a mechanical defect in the truck caused an unexpected acceleration resulting in the accident. She also argued that the tire tracks

were too contaminated by other vehicles for the State's witnesses to have drawn reliable conclusions.

We first address whether the trial court's jury instruction on causation conflicts with New Hampshire law by defining too restrictively the circumstances in which an intervening cause warrants acquittal. Causation is an element of both manslaughter, *see* RSA 630:2, I, and first-degree assault, *see* RSA 631:1, I(d). To establish causation, the State needed to prove not only that the prohibited result would not have occurred but for the conduct of the defendant, but also that the defendant's conduct was the legal (or proximate) cause of the prohibited result. *See* W. LAFAVE, CRIMINAL LAW § 3.12, at 292 (3d ed. 2000).

The scope and wording of jury instructions is generally within the sound discretion of the trial court, and any allegations of error will be evaluated by interpreting the disputed instructions in their entirety, as a reasonable juror would have understood them, and in light of all the evidence in the case. *State v. Bonacorsi*, 139 N.H. 28, 30 (1994). Reversal of a jury verdict is unwarranted when a jury charge fairly covers the issues and law of a case. *Id.*

The instruction given by the trial court was, in pertinent part, as follows:

> [T]he State must prove that the actions of the defendant directly caused Katie Silva's death and serious bodily injuries to the other children. A legal cause of death and/or serious bodily injuries is a cause that is a direct and substantial factor in bringing about that death and/or injuries. It is not merely a possible cause or a contributing cause of death and contributing cause of injuries. It must be the predominant cause without which the results would not have occurred. Because there can be more than one cause of death and/or injuries, the State does not have to prove that the defendant's conduct was the sole cause of the victim's death and/or injuries. However, the State does have to prove that the victim's death and/or injuries were a direct result of the defendant's actions; stated in a different way, that the defendant's conduct was a substantial factor in causing Katie Silva's death or the serious bodily injuries to the other children. . . .
>
> Now the defendant claims that a vehicle malfunction caused the vehicle to speed up resulting in a loss of control. It is up to you to determine whether this happened and, if so, if it is a supervening or alternate cause of Katie Silva's death in the manslaughter charge and the serious bodily injuries in the first degree assault charges. The causal link required between the

defendant's acts and the death and/or the serious bodily injuries is not proved if the intervening cause is the sole substantial cause of such death and/or injuries. The State must prove beyond a reasonable doubt that the acts of the defendant remain a substantial cause of the death and/or injuries. The element of causation is satisfied if the State proves beyond a reasonable doubt that the acts of the defendant remained the substantial cause of the death and/or injuries.

Under the instructions given by the trial court, the element of legal causation is defeated by an intervening cause only when the intervening cause amounts to the "sole substantial cause" of the prohibited result. The defendant argues that this instruction is contrary to New Hampshire law and thus a violation of her right to due process under the Fifth and Fourteenth Amendments to the United States Constitution, and Part I, Article 15 of the New Hampshire Constitution. First, she argues that the language provided by the trial court failed to instruct the jury on legal causation in accordance with *State v. Seymour*, 140 N.H. 736, 746, *cert. denied*, 519 U.S. 853 (1996), and second, that the standard for defeating legal causation provided by the trial court was appropriate for cases involving responsive intervening causes and inappropriate for coincidental intervening causes such as the instant case.

 First, we address whether the jury instruction was in accord with *Seymour*. The trial court in *Seymour* stated that "a legal cause is the cause without which the event would not have occurred, and the predominating cause, a substantial factor from which the event follows as a natural, direct and immediate consequence." *Seymour*, 140 N.H. at 746. Here, the jury instruction described legal causation using the following language:

> a cause that is a direct and substantial factor in bringing about that death and/or injuries ... not merely a possible cause or a contributing cause .... It must be the predominant cause without which the results would not have occurred. ... [T]he State [must] prove that the victim's death and/or injuries were a direct result of the defendant's actions ....

While the language used by the trial court in *Seymour* is preferable, the jury instruction in this case made clear that the legal cause must be the predominant cause and a substantial factor in bringing about the prohibited result. Further, the instruction that the prohibited result must be the "direct result" of the defendant's actions is substantially the same as the "natural, direct and immediate consequence" instruction in

*Seymour.* We conclude that the jury instruction provided by the trial court, considered as a whole, adequately stated the relevant law as set forth in *Seymour.*

Second, we address whether the "sole substantial cause" standard used by the trial court is the correct standard for legal causation under New Hampshire law in cases involving coincidental intervening causes. The "sole substantial cause" standard for legal causation has previously been used in criminal negligence cases. *See State v. Soucy,* 139 N.H. 349 (1995). As the defendant points out in her brief, the trial court applied the "sole substantial cause" standard of *Soucy,* "though Lamprey's case involved no question of medical malpractice."

Notwithstanding *Soucy,* the defendant argues that the "sole substantial cause" language of *Soucy* should be limited largely to "medical malpractice intervening causes." The defendant argues that an intervening cause that is a *coincidence* — a cause that occurs simultaneously with the defendant's act — should be treated differently from an intervening act that is a *response* to the defendant's prior act. She contends that when the intervening cause is a response to the defendant's act, as in *Soucy,* a greater degree of culpability is appropriate because the defendant's act placed the victim in danger of the subsequent act (*e.g.,* medical negligence) occurring. However, when the intervening cause is coincidental (such as the alleged unexpected acceleration in this case), the defendant argues that a lesser degree of culpability is appropriate because the intervening cause arose independently of the defendant's acts.

To apply this distinction, the defendant argues that the jury should have been instructed that there is no legal causation when an intervening cause contributes to the resulting death or injury. Under the defendant's proposed instruction, the defendant should be acquitted if there exists a coincidental intervening cause which itself is a "but for" cause of the accident, even if the coincidental intervening cause is not the sole substantial cause of the accident. The defendant does not cite, nor are we aware of, any New Hampshire cases in which we have made such a distinction.

The defendant, citing Professor LaFave's criminal law treatise and the MODEL PENAL CODE, provides two examples of tests that could be applied in cases of coincidental intervening causes, both of which incorporate some form of foreseeability test. "If the intervening cause is merely a coincidence rather than (as with medical treatment) a response, then the question is whether it was foreseeable." LAFAVE, *supra* § 3.12(g), at 312; *see also* MODEL PENAL CODE AND COMMENTARIES § 2.03 (1985) (acquittal appropriate where prohibited result is "too remote or accidental in its occurrence" when compared to defendant's act).

However, the jury instruction proposed by the defendant at trial contained no such foreseeability test. As she states in her brief, the defendant "asked the court to instruct the jury that the intervening cause in this case — the mechanical defect producing unintended acceleration — would defeat the element of causation if the jury believed that the mechanical defect 'contributed to' the accident." Thus, even if we were to agree that the tests set forth by LaFave and the MODEL PENAL CODE should apply, the instruction proposed by the defendant before the trial court is substantially different.

██ Moreover, we believe that the defendant's proposed instruction makes an unwarranted distinction in degrees of criminal culpability. Often the risk of a particular kind of contributing coincidental intervening cause is the very risk that made the conduct reckless in the first place. For example, if one were to pick up a loaded handgun, ensure that the safety is engaged, aim at a bystander and pull the trigger, it does not follow that a mechanical failure of the safety should exculpate the defendant if he kills the bystander. Yet, under the instruction proposed by the defendant, a jury would be instructed that if it found the intervening cause to be coincidental and if that cause contributed to the resulting death, then the jury should return a verdict of not guilty. We believe the "contributed to" standard, as proposed by the defendant, would be an inappropriate test to determine criminal culpability. We hold that the "sole substantial cause" instruction given by the trial court, and set forth in *Soucy*, is the correct standard under New Hampshire law as applied to the facts of this case. Thus, there was no violation of due process under either the State or Federal Constitutions.

We next consider the trial court's decision to admit evidence that the defendant had driven swervies in the past. At trial, one of the children, Michael Lacrosse, testified that the defendant had driven swervies on prior occasions. The defendant argues that this testimony was inadmissible under New Hampshire Rule of Evidence 404(b).

██ New Hampshire Rule of Evidence 404(b) prohibits introduction of evidence of prior bad acts or crimes in order to show "that the [defendant] acted in conformity therewith" and, therefore, was more likely to have perpetrated the crime charged. Such evidence, however, is allowed for other purposes, "such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." N.H. R. Ev. 404(b). Whether to admit evidence under Rule 404(b) involves the consideration of three factors: first, the evidence must be relevant for a purpose other than character or disposition; second, there must be clear proof that the defendant committed the prior offenses; and third, the

prejudice to the defendant must not substantially outweigh the probative value of the evidence. *State v. Dushame*, 136 N.H. 309, 316 (1992). The third prong incorporates the standards of New Hampshire Rule of Evidence 403 requiring a showing of unfair prejudice. *Id.* The second prong, requiring clear evidence of the prior bad acts, is not at issue in this case. A trial court is accorded broad discretion in ruling on the admissibility of evidence, *id.* at 317, and we review the trial court's ruling under the unsustainable exercise of discretion standard. *See State v. Berry*, 148 N.H. 88, 93 (2002); *see also State v. Lambert*, 147 N.H. 295, 296 (2001) (explaining the unsustainable exercise of discretion standard).

The defendant argues that the evidence of prior acts was not relevant and was admitted to prove propensity. Alternatively, she argues that the probative value was substantially outweighed by unfair prejudice to her case. The State, at trial, argued that the evidence was necessary to show knowledge of risk, because "in her own statement, she indicates . . . that she was aware these children used to rock back and forth. Clearly that puts her on notice of the potential danger . . . ." Given the defendant's statement, the evidence that the defendant did swervies in the past tended to show that she was aware of the risk, and thus the evidence was relevant to prove that the defendant acted in conscious disregard of a known risk. *See* RSA 626:2, II(c) (1996) (definition of "recklessly"). Therefore, we agree with the State that the prior acts of doing swervies were relevant for purposes other than proving character or disposition.

As to the issue of prejudice, although the defendant contested that she drove swervies on the day of the accident, there was eyewitness testimony from a number of the children that she was doing swervies on the day of the accident, as well as expert testimony to that effect. Given the strength of the evidence presented by the State at trial that the defendant drove swervies on the day of the accident, there was little danger that the jury would decide this issue based upon propensity rather than the evidence at hand. The evidence that the defendant drove swervies on prior occasions is not the sort of evidence that would arouse the emotions of a jury and cause it to decide the case on emotion rather than the evidence. *Cf. State v. Hotchkiss*, 129 N.H. 260, 263-65 (1987) (photograph of injured infant victim). Therefore, on the facts of this case, we hold that the trial court did not commit an unsustainable exercise of discretion.

*Affirmed.*

NADEAU and DALIANIS, JJ., concurred.